[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for legal separation and other relief brought to the judicial district of Danbury. Many of the facts that give rise to this action are not in dispute. The plaintiff, whose maiden name is Cheryl Wall, and the defendant were married on October 6, 1973, at Trumbull, Connecticut. The plaintiff has resided continuously in the state of Connecticut for at least twelve months immediately prior to the date that the complaint was filed. The marriage between the parties has broken down irretrievably without any reasonable prospects of reconciliation. There is one minor child issue of the marriage, Christine J. Bajda, born September 20, 1980. No other minor children have been born to the plaintiff wife since the date of marriage of the parties. Neither party has received state assistance.
From the evidence presented, the court finds that each party is equally at fault for the breakdown of the marriage.
The plaintiff is presently in counseling. She has post traumatic stress syndrome. The plaintiff has a bachelor's degree and some credits towards her master's degree. The plaintiff belongs to the American Management Association and the National Business Women's Association. She has passed two portions of the CT Page 7593 Connecticut examinations to become a CPA. She was employed between 1973 and 1977, as a staff accountant for a CPA firm. She was employed during 1977, for General Telephone and Electronics as a financial analyst, with her gross wages being $16,153.17.
The plaintiff has her own apartment in Milford, Connecticut. The plaintiff's financial affidavit dated March 27, 1997, shows a number of weekly expenses. It shows a mortgage of $439 and real estate taxes of $69. She has not made any mortgage or tax payments since the parties separated. She also shows a payment to Green Farms. That is the school academy that the youngest child attends. The plaintiff has not been paying this liability. The defendant has been paying it from his severance funds. The present annual cost to attend the Green Farms Academy is approximately $2000. She has an auto loan of $93 weekly. Her gas and oil transportation expense of $40 weekly is corrected to be $30 weekly. She has repairs for her automobile of approximately $15 weekly, as well as $30 weekly for her automobile insurance. She is not paying the homeowner's insurance. She owns a 1997 Honda with a fair market value of $17,000, a loan balance of $14,000 and an equity of $3000.
The plaintiff is presently working part-time as a bookkeeper with a gross and net weekly income of $25.
In the calendar year 1992, the parties filed a joint income tax return showing gross income of $94,205. The defendant earned that income from Acme United Corporation. In addition, the defendant had an accounting and tax service for which he had net profits of $2500. In the calendar year 1993, the parties filed a joint income tax return showing total wages of $96,423. In addition, the defendant had $2470 net business income from his tax service business. In the calendar year 1994, the parties filed a joint income tax return showing gross wages of $101,483. In addition, the defendant had business income of $2650. During the 1994 calendar year, the parties took a capital loss of $49,000. The parties filed a joint income tax return for the calendar year 1995, showing total wages of $112,269 that the defendant earned from Acme United Corporation. In addition, he had business income of $2600. In the calendar year 1996, the defendant had total wages of $195,487. He had $98 taxable income from his income tax preparation business. The approximate federal income tax that would be owed if the parties filed a joint income tax return for the calendar year 1996, would be $30,891. The approximate federal income tax owed if the defendant filed an CT Page 7594 individual income tax return for the calendar year 1996, would be $59,857. All of the income on tax returns shown for the calendar years 1992 through 1996, was earned by the defendant.
The total wages earned by the defendant in 1996, of $195,487.35 consisted approximately as follows: (a) salary — $27,501; (b) 1996 severance package — $165,006; and (c) wage/stock option — $3705. In addition to his 1996 salary of approximately $27,501, he received medical reimbursement of approximately $2467. He received his salary on a monthly basis. The severance pay of $165,006 was received monthly until he requested a lump sum payment. The severance package was supposed to be paid over an eighteen month period. He requested the lump sum payment in August of 1996. Prior to August, 1996, he had received monthly payments of $9167, totaling $36,668. In August of 1996, he received a gross lump sum payment of $128,338. The net amount that he received from the $128,338 was $90,000. He has approximately $13,000 left from that amount. He received unemployment compensation of $370 weekly from March of 1996 until January, 1997.
The defendant also had a profit sharing plan with Acme United Corporation. He took a distribution on that plan in November of 1996, in the total amount of $22,620.04. That distribution is not part of the $195,487.35.
The $90,000 that the defendant received for his lump sum severance on or about August 16, 1996, was used primarily to set up two separate bank accounts — one, in the amount of $28,339 and the second, in the amount of $56,861. In addition, a mortgage payment was made in the amount of $2100 and $2000 was paid to the plaintiff. The $28,339 bank account was set up at People's Bank. Two checks were paid to the plaintiff from that account — one, in the amount of $3600 and the second, in the amount of $3000. In addition, People's Bank was paid two checks — one, in the amount of $3600 and the second, in the amount of $3000. A $15,139 check was also drawn from that account and deposited into the Webster Bank. The $15,139 at the Webster Bank was used primarily as follows: (1) $450 to Tom Adams for percolation tests for the Newtown lot that was required in order to complete the sale; (2) $2100 to People's Bank for mortgage payment; (3) $525 to Haas for engineering work for the septic system that was required in order to complete the sale of the Newtown lot; (4) $1000 was used for household expenses by the defendant, including food, gasoline and other items; (5) three checks were paid to the plaintiff — one of CT Page 7595 $2000 and a second, of $2500 and a third, of $2000; and (6) $3,917.71 was spent for education for an adult daughter.
The $56,861 account was dispersed as follows: (1) $13,000 to settle the claim with Diversified Coolidge Equities; and (2) additional funds were transferred from this account to an account at People's Bank, totalling approximately $43,000. The disbursement of that $43,000 is shown on plaintiff's exhibit twelve. Mortgage payments paid from the account, shown as plaintiff's twelve, totalled $10,500. Payments made to the plaintiff from that account totalled $16,225. The defendant has presently remaining $11,000 from the severance pay at a People's Bank money market account. He also has $181 in his People's Bank checking account. He has a 1994 Toyota Camry with a fair market value of $12,000, a loan balance of $10,862, and an equity of $1138. He has $22,620 in an IRA that was converted from his Acme United Profit Sharing Plan. He also has a retirement plan for employees of Acme that will pay $8791 per year under a 100 percent joint survivorship election.
The account that was originally opened up in the amount of $56,861, shown on plaintiff's exhibit eleven, had transferred from it $10,000 that is shown on plaintiff's exhibit twelve.
On September 23, 1996, the parties entered into a written agreement for each of them to withdraw $3000 with any part of the $3000 not spent not to be considered part of the final settlement. The plaintiff withdrew her $3000, but the defendant did not.
The defendant's financial affidavit dated March 27, 1997, shows net income of $1250 weekly. This is income that he is earning doing tax consulting work for a public accounting firm. His financial affidavit shows a $170 weekly FICA expense which should have been shown in the portion of the affidavit having to do with weekly income. In deducting the $170 weekly from his gross weekly of $1250, that amounts to a net weekly of $1080, which is the amount used for determining support under the child support guidelines.
The defendant will be able to start to draw on his retirement plan at age sixty-five. He has, as part of his severance plan, an eighteen month health package that covers himself, the plaintiff and the children of the marriage. That health package terminates in September of 1997. CT Page 7596
The Toyota automobile was purchased new by the defendant. The defendant has term life insurance in the face amount of $300,000. The plaintiff is presently the named beneficiary.
The defendant cannot commence to withdraw money on his retirement plan prior to age sixty. For the period of January 1, 1997 through March 27, 1997, in addition to his consulting income, the defendant has had income from tax clients totalling $575. The defendant was born on November 24, 1948. He has a college degree in accounting that he attained in 1972. He also has twenty credits towards a master's degree. He is a CPA. He is not licensed in Connecticut although he can work as a CPA in Connecticut for a public accounting firm. He also has prepared individual income tax returns. He commenced working for Acme Corporation in 1978. He was terminated on March 29, 1996, due to reorganization. At the time of termination, he was a senior vice president in finance. He held that position since 1986.
The defendant had a heart attack in February, 1994.
The defendant has actively sought employment since March of 1996, including going to job counseling, job centers and sending out resumes. He also took a three and one-half to four months computer training course. He is presently seeking to obtain employment. His present job is not considered to be permanent.
Title to the property located at 147-149 Burritt Avenue, Stratford, Connecticut was conveyed to the parties on February 1, 1979, for $58,900. The defendant had been paying the mortgage to People's Bank of $1800 monthly, as well as $2100 monthly to the plaintiff. He fell behind in his mortgage payments early in 1996. In order to bring the mortgage current, People's mortgage was increased from $1900 per month to $2100 per month for one year commencing July of 1996, with the interest rate reduced for one year from 10 1/4 percent to 5 1/2 percent. In July of 1997, the interest rate will again increase to 10 1/4 percent. Prior real estate taxes have been paid in full on the family home. There is an arrearage of taxes due to the town of Stratford for car taxes and sewer use taxes. The sewer use taxes shown on the defendant's financial affidavit total $4503. The car taxes total $1044. The family home in question is a multi-family home. At the present time, the defendant lives on the first floor of the family home. The plaintiff vacated the family home in August of 1995. The remaining two units in the family home have not been rented for CT Page 7597 approximately five years. One of the units is a third floor attic unit. It will cost approximately $5000 to finish that attic apartment so that it could be rented. It will cost approximately five to ten thousand dollars to renovate the second floor apartment so it can be rented. The court finds that the fair market value of the family home is $125,000. It has a first mortgage of $161,181 and a deficit equity of $36,181.
The parties acquired title to a lot located on Robin Hill Road, Newtown, Connecticut on June 1, 1976, for $22,000. The parties entered into a stipulation dated March 27, 1997, for the sale of the lot with the proceeds to be dispersed as follows: (1) payment of the brokerage commission, if any; (2) payment of conveyance taxes; (3) payment of recording fees; (4) payment of attorney's fees related to the closing; (5) payment of past due real estate taxes; and (6) payment of a lien in favor of the IRS in the approximate amount of $34,700. The remaining net proceeds from the sale are to be held by the closing attorney in an interest bearing savings account until distribution is ordered by the court.
The approximate $34,700 IRS liability is a corporate liability for the years 1995 and 1996.
The lot was sold on April 10, 1997, for a total sale price of $80,000. The net proceeds held in escrow from the sale is $22,072.76. Included in the disbursements were $9406.67 to the Newtown tax collector, $33,141.51 for an IRS lien, $3,513.52 for another IRS lien, and $5,858.12 for the Ruiz judgment lien.
The initial deposit to purchase the lot came from a loan from the defendant's parents. That loan has since been forgiven. A mortgage was also used to finance the lot. Part of the net proceeds from the sale included a $4000 down payment. That down payment is not being held by the closing attorney but, rather, was turned over to the plaintiff on December 10, 1996.
On October 9, 1996, the parties entered into a written offer to settle for $10,000, as payment in full, a claim against them of Diversified Coolidge Equities, L.P. The plaintiff claims that she agreed to settle the claim of Diversified Financial as a result of duress by the defendant. The court finds that claim is not credible and that no duress was imposed upon the plaintiff by the defendant to enter into that settlement. CT Page 7598
The plaintiff purchased a business in May of 1985, known as Corporate Education Center. The initial name of the business was the Danbury Business Institute. The plaintiff inherited approximately $225,000. The parties also increased the mortgage on the family home to use for the business. The mortgage was refinanced from $59,000 to $180,000. Approximately $30,000 of the refinancing was used to pay various liabilities and some was used for the plaintiff's business. The business trained people for computer and secretarial work. It closed early in 1996, when the plaintiff decided to end the business.
The plaintiff has an approximate $51,000 IRS-1244 loss that is her loss only, as it arises out of stock that was in her name only from the business.
The court finds that the amount lost by the plaintiff in operating her business was approximately $100,000 in 1985, plus an additional approximate $60,000 in 1986.
The parties have agreed to joint legal custody of the minor child, as well as shared physical custody with both parents having reasonable, liberal and flexible rights of visitation with the child.
This court has considered the provisions of § 46b-82
regarding the issue of alimony, and has considered the provisions of § 46b-81 (c) regarding the issue of property division, and has considered the provisions of § 46b-56 and § 46b-56a regarding the issues of custody and joint custody and visitation, and has considered the provisions of § 46b-84 and the child support guidelines regarding the issue of support, and has considered the provisions of § 46b-62 regarding the issue of attorney's fees. The court enters the following orders.
A. BY WAY OF LEGAL SEPARATION
 1. An order of legal separation is entered between the parties.
B. BY WAY OF CUSTODY AND VISITATION
 1. An order of joint legal custody for the minor child is entered.
2. The parties are also awarded shared physical CT Page 7599 custody of the child.
 3. Both parties are granted reasonable, liberal and flexible rights of visitation with the child.
C. BY WAY OF SUPPORT
 1. The court makes a specific finding on the record that the application of the guidelines would be inequitable and inappropriate in this case under the criteria provided in § 46b-215a-3 (b)(6)(A). The court finds that the amount of support that the plaintiff would pay to the defendant under the support guidelines is zero. The court finds that the amount of support that the defendant would pay to the plaintiff under the guidelines is $228 per week.
 2. The defendant is ordered to maintain health insurance for the benefit of the minor child as is available from his prior employment. Both parties are ordered to share equally in all unreimbursed or uncovered medical, dental, optical, psychological, orthodontic and prescriptive drug expenses for the minor child. When the defendant's health package from his prior employer terminates in September of 1997, the parties are to be equally responsible for one-half of all medical expenses for the minor child.
D. BY WAY OF ALIMONY
 1. The defendant is ordered to pay to the plaintiff alimony in the sum of $450 per week.
 2. Alimony is to terminate on the earliest of the following events: (a) the death of the plaintiff; (b) the death of the defendant; or (c) the remarriage of the plaintiff.
 3. The provisions of § 46b-86 (a) and § 46b-86 (b) are applicable.
 4. The defendant is to continue to provide health insurance at his sole expense for the benefit of the plaintiff as is available from his prior CT Page 7600 employment.
 5. Each party is responsible for any of their own health expenses that are unreimbursed or uncovered by health insurance.
 6. The defendant is ordered to name the plaintiff as beneficiary of $150,000 of his $300,000 life insurance policy. The provisions of § 46b-86 (a) and § 46b-86 (b) are applicable. This requirement automatically terminates in the event the obligation to pay alimony terminates.
E. BY WAY OF PROPERTY ORDERS
 1. The liability shown on the defendant's financial affidavit to Unquowa School in the amount of $2833, as well as the liability shown on his financial affidavit to Green Farms Academy totalling $13,000 is to be paid in full from the net proceeds from the sale of the lot in Newtown, Connecticut. The balance of the net proceeds are ordered divided equally between the parties. The $4000 deposit retained by the plaintiff for the sale of the lot is awarded to the plaintiff.
 2. The court orders that the plaintiff quitclaim to the defendant all of her right, title and interest in the family home located at 147-149 Burritt Avenue, Stratford, Connecticut. The defendant is to pay the first mortgage and hold the plaintiff harmless therefrom, as well as all municipal real estate taxes, as well as any arrearage on the first mortgage. He is also responsible for the town of Stratford sewer use taxes due on the family home and automobile tax, and is to hold the plaintiff harmless therefrom.
 3. The court orders that the defendant pay the balance due to Avco Financial and hold the plaintiff harmless.
 4. The defendant's financial affidavit shows a liability to Sears in the amount of $3328. The court orders that the defendant pay the balance CT Page 7601 due to Sears and hold the plaintiff harmless.
 5. The defendant is to pay the Home Depot liability shown on his affidavit in the amount of $2054 and hold the plaintiff harmless therefrom. He is also to pay the liability to Knott and Knott shown on his affidavit in the amount of $340, and hold the plaintiff harmless therefrom.
 6. The defendant is to pay the Bridgeport Radiology liability shown on his affidavit in the amount of $656 and hold the plaintiff harmless therefrom.
 7. The plaintiff is to pay the CityBank MasterCard shown on her financial affidavit with a balance of $4000 and hold the defendant harmless therefrom.
 8. The defendant is to pay to the plaintiff $6000 from the People's Bank money market account. The balance of that account is awarded to the defendant.
 9. The defendant is ordered to transfer to the plaintiff one-half of his IRA that was converted from his Acme United Profit Sharing Plan or $11,310, whichever sum is greater, by QDRO.
 10. The defendant is ordered to transfer to the plaintiff one-half of the defendant's retirement plan from Acme United Corporation. The defendant is ordered to elect a joint and survivor option under that plan naming the plaintiff as survivor. The transfer is to be by QDRO. The court retains jurisdiction over any disputes involving the language of the QDROs ordered herein. The one-half awarded to the plaintiff is based on the value of the defendant's pension plan as of the date he commences to receive pension benefits.
 11. The 1997 Honda shown on the plaintiff's financial affidavit, having a value of $17,000 and a loan balance of $14,000 and an equity of $3000, is ordered transferred solely in the name of the plaintiff.
CT Page 7602
 12. The People's Bank account shown on the plaintiff's financial affidavit with a balance of $832 is assigned solely to the plaintiff, and the People's Bank account shown on the defendant's financial affidavit with a balance of $181 is assigned solely to the defendant.
 13. The $51,000 loss that the plaintiff has under § 1244 from her stock loss is assigned solely to the plaintiff.
F. BY WAY OF ATTORNEY'S FEES
 1. No attorney's fees are awarded in favor of either party.
G. MISCELLANEOUS ORDERS
 1. The parties are ordered to exchange copies of their federal and state income tax returns within thirty days after such returns have been filed by certified mail, return receipt or registered mail, return receipt for so long as there is an outstanding alimony order.
 2. Counsel for the plaintiff is to prepare the judgment file within thirty days and file it in the clerk's office.
Axelrod, J.